IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BROCK MURTHA**, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF** |
| vs. | **DEMAND FOR JURY TRIAL** |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**, | |
| Defendant. | |

COMES NOW Plaintiff, BROCK MURTHA, who by and through his attorney of record, hereby files this Complaint for Damages, Declaratory, and Injunctive Relief against Defendant, NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, and alleges, on the basis of personal knowledge and/or information and belief, as follows:

## PARTIES

1. Plaintiff, BROCK MURTHA (hereinafter "Plaintiff") is an individual domiciled in the State of New York who was selected by the United States Naval Academy (hereinafter "the Naval Academy") to play as a member of its baseball team in the 2025-2026 season.

2. Defendant NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (hereinafter "NCAA" or "Defendant") is an unincorporated association with its principal place of business located at 700 W. Washington Street, Indianapolis, Indiana 46204. It is, therefore, a citizen of Indiana. Comprised of over 1,200 member colleges and universities across three divisions (Division I, Division II, and Division III), Defendant functions as the central governing body of

1

intercollegiate athletics in the United States, regulating every major aspect of eligibility, competition, and student-athlete participation.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this dispute under Article III of the United States Constitution and 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of New York and Defendant is a citizen of the State of Indiana such that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Defendant because it and its member institutions currently solicit and transact continuous and systematic business in the District of Maryland, including athletic competitions, ticket and merchandise sales, broadcast agreements, and other revenue-generating activities. Defendant's governance, rulemaking, and eligibility enforcement activities are purposefully directed towards this District and have caused injury to Plaintiff as a student-athlete residing and competing here.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2)-(3) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and because Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

A. **NCAA Division I Bylaws and Rules of Eligibility**

6. The NCCA Division I promulgates its own rules and operating guidelines, codified in the NCAA Division I Manual 2025-2026 (hereinafter "Bylaw(s)"), including those that determine the eligibility of student-athletes to participate in intercollegiate athletics.

7. These rules have the force and effect of contract among all Division I members, who have agreed to adhere to and enforce the NCAA's uniform eligibility restrictions as a condition of membership.

8. Defendant has long standing practice of enforcing a rule that provides Division I student athletes with a five-year timeframe to exhaust their eligibility to compete (hereinafter the "Five-Year Rule").[1] Within that five-year period, however, student athletes are limited to competing in only four seasons of intercollegiate play (hereinafter the "Four-Seasons Rule")[2] and otherwise instructs that a student-athlete may use the fifth year to participate in practices or other team activities with minimal or no game time (hereinafter the "Redshirt Rule"). Collectively, the rules limit each athlete to four seasons of intercollegiate competition within a five-year period following initial collegiate enrollment.

9. Defendant maintains a narrow set of exceptions to these limitations through its waiver provisions. Pursuant to Bylaw 12.6.1.7, the NCAA's Committee on Student-Athlete Reinstatement may approve a waiver of the Five-Year Rule by a two-thirds vote as "it deems

---

[1] Rule 12.6.1. Five-Year Rule. A student-athlete shall complete the student-athlete's seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution, with time spent on an official religious mission, in the armed services or with recognized foreign aid services of the U.S. government being excepted. For international students, service in the armed forces of the student's home country is considered equivalent to such service in the United States. *See* EX. 1, NCAA, 2025-2026 Division I Manual, Bylaw 12.6.1, at 46 (August 30, 2025).

[2] Rule 12.6 Seasons of Competition: Five-Year Rule. A student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport (see Bylaws 12.02.3 and 14.3.3). An institution shall not permit a student-athlete to represent it in intercollegiate competition unless the student-athlete completes all seasons of participation in all sports within the time periods specified below. *See* EX. 1, NCAA, 2025-2026 Division I Manual, Bylaw 12.6, at 46 (August 30, 2025).

3

appropriate." *See* EX. 1, NCAA, 2025-2026 Division I Manual, Bylaw 12.6.1.7, at 48 (August 30, 2025).

10. As relevant here, the NCAA's Committee on Student-Athlete Reinstatement may grant a student-athlete an additional season of competition through its "Season-of-Competition Waiver – Competition While Eligible" (hereinafter "Season-of-Competition waiver") provision. *See* EX. 1, NCAA, 2025-2026 Division I Manual, Bylaw 12.6.6, at 55 (August 30, 2025). Season-of-Competition waivers may be issued "in a case in which the student-athlete participated in a limited amount of competition while eligible due to a coach's documented misunderstanding of the legislation or other extenuating circumstances. In cases in which a student-athlete does not meet the criteria of this waiver, the Committee on Student-Athlete Reinstatement shall have authority to review and grant a waiver based on additional documented extenuating circumstances." EX. 1, NCAA, 2025-2026 Division I Manual, Bylaw 12.6.6, at 55 (August 30, 2025).

B. **Plaintiff's Collegiate Athletic Career**

11. Emerging as an exceptionally talented baseball player from Sayville High School in West Sayville, New York, Class of 2020, Plaintiff began his collegiate athletic career during the 2020-2021 season at the University of Notre Dame, an NCAA Division I institution.

12. Although public health restrictions related to the COVID-19 pandemic precluded Plaintiff from participating in his high school senior baseball season, he had committed to the University of Notre Dame early in his high school career, signaling his rising talent.

13. Plaintiff's playing time at the University of Notre Dame during the 2020-2021 season, however, was substantially limited due, in part, to NCAA's COVID-19 "blanket waivers" that permitted institutions to self-apply a waiver of competition and eligibility rules for the 2020-

2021 season, thereby permitting upperclassmen to retain eligibility despite competition disruptions to the 2020 playing season.[3]

14. Plaintiff competed in six baseball games during the 2020-2021 season. He was a defensive replacement (late in the game) in five (5) games, never for more than one inning. He recorded one total at bat in a sixth (6th) game, again late in the game. He never started in a game, and the last game he played (April 9th) was the twentieth (20th) game of the season out of forty-seven (47) total games.

15. Plaintiff's last travel roster appearance at Notre Dame University was on April 9, 2021. After that April 9th game, he was never on the travel roster again for the remainder of the season, and did not even travel with the team for the deep post-season run in which the team made it all the way to the Super Regional against Mississippi State. He watched the entire post season from home.

16. Plaintiff was redshirted for the 2021-2022 season at Notre Dame University.

17. In 2022, having been recruited by the Naval Academy as a prospective student-athlete for its NCAA Division I baseball program, Plaintiff visited the Academy with his family.

18. At that time, the Naval Academy explicitly assured Plaintiff that he would retain four years of eligibility to compete on the baseball team upon entering the Naval Academy as a plebe.

19. Plaintiff transferred to the Naval Academy in 2022, forfeiting 60 previously earned credits.

20. The determining factor in Plaintiff's decision to enter the Naval Academy, and to commit to five years of active-duty service upon graduation therefrom, was the Naval Academy's assurance that he would be eligible to compete as a student-athlete for four years.

---

[3] *See Pavia v. NCAA*, 760 F. Supp. 3d 527, 535 n.6 (M.D. Tenn. 2024) (discussing NCAA's issuance of blanket waivers on account of the COVID-19 pandemic, stating "[i]n effect, the 2020 season did not count towards the four seasons of competition limit or five years of eligibility.").

21. Following Plaintiff's admission to the Naval Academy, Plaintiff competed as a student-athlete on the Naval Academy baseball team in the 2022-2023, 2023-2024, and 2024-2025 seasons.

C. **Defendant's Denial of the Naval Academy's Request for a Season-of-Competition Waiver**

22. Prior to the 2025-2026 season, in March 2025, the Naval Academy submitted a Season-of-Competition waiver (hereinafter "the waiver") on Plaintiff's behalf such that he could compete in the 2025-2026 season.

23. On March 28, 2025, Defendant denied the Academy's waiver submission on the ground that Plaintiff "competed in a game past the halfway point" of the University of Notre Dame's 2020-2021 season.

24. On March 31, 2025, Plaintiff received notification of Defendant's denial via email from the Naval Academy's compliance officer.

25. At the time of notification, the Naval Academy compliance officer did not provide Plaintiff with Defendant's statement of denial.

26. At the time of notification, the Naval Academy compliance officer did not inform Plaintiff of the designated 30-day appeal period.

27. Plaintiff did not receive documentation of Defendant's denial until May 20, 2025—after the 30-day appeal period had lapsed.

28. Upon receipt, Plaintiff reviewed the documentation and discovered that the Naval Academy's initial submission of the waiver contained incorrect information about his role and participation on the University of Notre Dame baseball team.

29. The Naval Academy's initial waiver submission mischaracterized Plaintiff as a "closer," implied ongoing roster activity, and incorrectly reported the date of his final game.

30. On August 28, 2025, Plaintiff met with Naval Academy compliance staff and athletic leadership to discuss the factual inaccuracies contained in the initial waiver submission. Following the meeting, Naval Academy compliance staff obtained corrected participation records from the University of Notre Dame and transmitted the corrected information to Defendant.

31. On September 16, 2025, Defendant filed and reflected the corrected information in the record pertaining to its initial waiver decision; on reconsideration, Defendant again denied the waiver.

32. Following Defendant's denial on reconsideration, the Naval Academy compliance staff informed Plaintiff that it has no additional means of requesting another season of competition.

33. On January 5, 2026, the Naval Academy presented Defendant with an "Institutional Letter of Responsibility and Request for Acceptance of Out-of-Time Reconsideration." Therein, the Naval Academy accepted full responsibility for its failure to properly notify Plaintiff of the 30-day appeal period, stating that its procedural and substantive errors "materially affected the adjudication and timing" of Plaintiff's waiver. A true and correct copy of letter dated January 5, 2026 is attached hereto as Exhibit "2" and is incorporated herein by this reference.

34. In the January 5, 2026 letter, the Naval Academy indicated that Plaintiff "diligently cooperated with the institution, provided accurate information regarding his participation history and relied on institutional guidance" such that Plaintiff "bears no responsibility for the failure to preserve the appellate timelines." EX. 2. Naval Academy Letter, January 5, 2026.

35. The Naval Academy requested that Defendant accept an out-of-time reconsideration of Plaintiff's waiver due to "documented institutional error" and "waive or toll applicable timeliness requirements to prevent prejudice to [Plaintiff]." The Naval Academy further

7

requested that Defendant consider the corrected participation records. EX. 2. Naval Academy Letter, January 5, 2026.

36. With its submission of the January 5, 2026 letter, the Naval Academy also provided Defendant with a "Reconsideration Memorandum." A true and correct copy of the memorandum dated January 5, 2026 is attached hereto as Exhibit "3" and is incorporated herein by this reference.

37. Therein, the Naval Academy indicated its position that the information underlying its request for reconsideration constituted "new information" in satisfaction of Defendant's "New Information" reconsideration policy. EX. 3, Naval Academy Memorandum, January 5, 2026.

38. As relevant here, pursuant to the NCAA Division I Committee on Legislative Relief Policies and Procedures, requests for reconsideration "may only be submitted if the request contains new information (supported by contemporaneous documentation) that is germane to the original waiver assertions and was not readily available to any involved individual at the time of the previous decision." Ex. 4, NCAA Division I Committee on Legislative Relief, Policies and Procedures, at 10 (updated November 2024).

39. In its Reconsideration Memorandum, the Naval Academy requested relief from the denial of Plaintiff's waiver based on "newly available and material evidence" and its "demonstrable institutional error that prevented timely appeal," stating that "[b]ecause the corrected records were not available and were not transmitted to [Plaintiff] prior to the expiration of the NCAA appeal period, they plainly represent 'new information' that was not reasonably available at the time the NCAA reached its original decision." EX. 3, Naval Academy Memorandum, January 5, 2026.

40. In its Reconsideration Memorandum, the Naval Academy stated that the newly obtained, accurate documentary evidence demonstrates that Plaintiff's participation reflects the criteria

Defendant has historically treated as qualifying for a Season-of-Competition waiver, specifically limited early-season participation and no record of competition beyond the halfway point. EX. 3, Naval Academy Memorandum, January 5, 2026.

41. On February 10, 2026, Defendant denied the Naval Academy's request to submit an appeal outside of the 30-day appeal period, noting that the decision was "final, binding, and shall not be subject to review by any other authority." A true and correct copy of the emailed letter dated February 10, 2026 is attached hereto as Exhibit "5" and is incorporated herein by this reference.

42. In its February 10, 2026 correspondence, Defendant indicated that "exceptions to the 30-day calendar day policy may be granted by the Division I Athletics Eligibility Subcommittee chair when an institution is able to demonstrate, in writing, that exceptional circumstances caused the institution's appeal to be submitted beyond the 30-day appeal period." EX. 5, NCAA Reconsideration Denial, February 10, 2026.

43. Given Defendant's refusal to grant Plaintiff a waiver for the 2025-2026 season, Plaintiff has filed this action to obtain injunctive relief from this Court. The need for such relief is urgent.

**D. Defendant's Rule of Restitution**

44. Pursuant to Bylaw 12.9.4.2—commonly known as the "Rule of Restitution"—the NCAA Board of Directors may take action against a student-athlete and member institution he or she attends (and, consequently, the student-athlete's teammates) if the student-athlete and member institution rely on a court-issued temporary restraining order or preliminary injunction enjoining unlawful conduct by the NCAA and mandating that the student-athlete be permitted to participate in athletic competition if the temporary restraining order or preliminary injunction is later revoked for any reason. *See* EX 1. NCAA, 2025-2026 Division I Manual, Bylaw 12.9.4.2, at 57-58 (August 30, 2025).

45. The Rule of Restitution is intended to discourage student-athletes and member institutions from challenging the NCAA's improper rules and rulings by making it effectively impossible for student-athletes and member institutions to rely on validly entered court orders and to obtain meaningful injunctive relief. Given the operation of the Rule of Restitution, even if a student-athlete obtains a temporary restraining order or preliminary injunction on the basis that an NCAA ruling is likely invalid such that the NCAA is enjoined from enforcing its unlawful restraint, member institutions typically do not allow the student-athlete to participate in athletic competition.

46. Based on the foregoing, courts have enjoined Defendant from enforcing the Rule of Restitution against student-athletes and their respective institutions who rely on a temporary restraining order or preliminary injunction when participating in intercollegiate athletics. *See, e.g.*, *Pavia*, 760 F. Supp. 3d at 545; *Ohio v. NCAA*, 706 F. Supp. 3d 583, 601-02 (N.D.W. Va. 2023).

47. For the requested preliminary injunctive relief to be effective, this Court must enjoin Defendant from enforcing the Rule of Restitution for complying with an order granting that relief. *See* Ex 1. NCAA, 2025-2026 Division I Manual, Bylaw 12.9.4.2, at 57-58 (August 30, 2025).

**E.  The Irreparable Harm to Plaintiff**

48. Plaintiff will suffer substantial irreparable harm if the Court does not grant the preliminary injunction with temporary restraints requested in this action, which would enable him to immediately join his teammates for training and compete in his final season as a collegiate athlete before taking his commission as an officer in the Marine Corps in May 2026. A true and correct copy of Plaintiff's Declaration of Irreparable Harm: Professional, Academic, and Leadership Impact is attached hereto as Exhibit "6" and is incorporated herein by this reference.

49. If the Court does not grant Plaintiff the requested injunctive relief, he will be unable to play for the Naval Academy in the 2025-2026 season. He will thus be denied his final opportunity "to practice the small-unit leadership that mimics a Marine Platoon" before commissioning and becoming "responsible for the lives of 30 to 50 Junior Enlisted Marines as their Platoon Commander." EX. 6, Plaintiff's Declaration of Irreparable Harm: Professional, Academic, and Leadership Impact, at 1. *See id.* at 597 (stating that courts have consistently and repeatedly determined that losing the opportunity to participate in sports constitutes irreparable harm).

50. The denial of this opportunity further extends to the loss of Plaintiff's "ability to demonstrate and refine the tactical competence required to lead by example" as well as to "build the authentic bonds that come from shared physical hardship during a game or a high-pressure practice." EX. 6, Plaintiff's Declaration of Irreparable Harm: Professional, Academic, and Leadership Impact, at 1.

51. Plaintiff has already lost an opportunity to practice with his teammates at the Naval Academy and unless he is assured that he will be eligible to play during the 2025-2026 season, Plaintiff will continue to lose this opportunity to practice, participate in competitions and become fully integrated with the team. The missed practices and games have, and will continue to, harm Plaintiff irreparably because each lost day constitutes a lost opportunity to develop and refine Plaintiff's "professional competence and compassion"—skills that are essential to Plaintiff's forthcoming responsibility to lead Marines in "high-consequence environments." EX. 6, Plaintiff's Declaration of Irreparable Harm: Professional, Academic, and Leadership Impact, at 1. *See United States v. Barnes*, 749 F. Supp. 3d 822, 837-38 (E.D. Mich. 2024) (U.S. Dist. Nev. 2025) (finding denial of opportunity to play collegiate sports constitutes irreparable harm, citing loss of training and integration with team).

52. Despite the obvious and immediate harm that Plaintiff would suffer if not granted the requested waiver, Defendant has refused to grant the subject Season-of-Competition waiver notwithstanding the corrected University of Notre Dame participation records, now part of the administrative record, that would have materially affected the outcome of the initial waiver determination. This Court's immediate intervention is required to rectify this needless wrong.

## FIRST CAUSE OF ACTION

### Breach of Contract

53. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

54. The Naval Academy is a member of the NCAA Division I. As such, the Naval Academy has agreed to submit to and abide by Defendant's rules and regulations in exchange for the benefits of NCAA membership, such as participation in high-level intercollegiate athletic competitions. As a member, the Naval Academy has also agreed to subject itself to NCAA discipline for any failure to comply with its rules and regulations.

55. Plaintiff, as a student-athlete enrolled at the Naval Academy who is subject to the same NCAA rules and regulations, is an intended third-party beneficiary of the contractual relationship between the Naval Academy and Defendant.

56. Under Maryland law, every contract contains an implied covenant of good faith and fair dealing, which imposes an obligation on the parties to treat one another reasonably and fairly, and requires that neither party act in a manner that frustrates the other party's right to receive the benefits of the agreement.

57. Defendant has a contractual obligation to Plaintiff, as an intended third-party beneficiary, to enforce its rules and regulations fairly, consistently, and reasonably.

58. As fully set forth above, Defendant refuses to grant Plaintiff a Season-of-Competition waiver and thereby deem Plaintiff eligible for the 2025-2026 season based on its unreasonable and arbitrary application of its Five-Year Rule, its Season-of-Competition waiver provision, and its policies and procedures regarding Requests for Reconsideration. Specifically, Defendant's refusal to consider the newly available and material evidence Plaintiff submitted to correct clerical errors that spanned two institutions—University of Notre Dame and the Naval Academy—and was thereby entirely outside of Plaintiff's control is directly contrary to Defendant's promise to enforce and adjudicate its rules and regulations fairly and reasonably.

59. By refusing to deem Plaintiff eligible for the 2025-2026 season based on its denial of Plaintiff's Season-of-Competition waiver, notwithstanding the corrected, newly available information that directly undermines the factual basis for the denial, in conjunction with the Naval Academy's procedural failures that prevented Plaintiff from taking a timely appeal of the denial, Defendant has breached its contractual obligations because there is no rule or regulation that authorizes such unreasonable, arbitrary, and capricious actions.

60. As a direct and proximate result of Defendant's breach, including its breach of the implied covenant of good faith and fair dealing, Plaintiff, as an intended third-party beneficiary of the Academy's agreement to be bound by NCAA rules and regulations, has suffered and continues to suffer substantial and irreparable harm and significant damages. To unjustly prevent Plaintiff from playing baseball alongside his teammates in the 2025-2026 season deprives him of the once-in-a-lifetime opportunity to compete in Division I baseball games, improve his skills, support his teammates, and develop his leadership competencies in anticipation of his forthcoming commission as an officer in the Marine Corps.

61. WHEREFORE, Plaintiff prays for relief as set forth below.

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

62. As alleged above, Plaintiff faces immediate and irreparable harm absent injunctive relief. As set forth more fully in Plaintiff's contemporaneously filed Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction, Defendant's refusal to deem Plaintiff eligible for the 2025-2026 season threatens the permanent loss of unique and critically important educational and professional development opportunities that cannot be remedied by monetary damages. Accordingly, Plaintiff respectfully requests that this Court preliminarily and permanently enjoin the NCAA from enforcing any rule, bylaw, or decision that denies Plaintiff the opportunity to compete in the 2025-2026 academic year or that penalizes any institution, including the Naval Academy, for recognizing or relying upon this Court's injunctive order.

## DECLARATORY RELIEF

63. Defendant grievously erred in its handling, consideration, and adjudication of Plaintiff's Season-of-Competition waiver and in such process breached the duty of good faith and fair dealing owed to Plaintiff. Respectfully, this Court should declare it so, and enter a Declaratory Judgment finding that Plaintiff is eligible to participate in Division I intercollegiate baseball at the Naval Academy during the 2025-2026 season.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, BROCK MURTHA, respectfully requests judgment in his favor and against Defendant, NCAA, as follows:

a. Declaring that the NCAA's enforcement of its eligibility and waiver rules, including its denial of Plaintiff's Season-of-Competition Waiver and refusal to conduct a meaningful and good-faith reconsideration review based on new information, violates its own bylaws, governing policies, and contractual obligations to student-athletes;

b. Declaring that Plaintiff is eligible to participate in intercollegiate competition for the 2025-2026 academic year and to utilize his remaining season of eligibility without restriction;

c. Preliminarily and permanently enjoining the NCAA from enforcing any rule, bylaw, or decision that denies Plaintiff the opportunity to compete in the 2025-2026 academic year or that penalizes any institution, including the Naval Academy, for recognizing or relying upon this Court's injunctive or declaratory order;

d. Awarding Plaintiff compensatory and punitive damages, attorneys' fees and costs, prejudgment and post-judgment interest, and all other damages permitted by law; and

e. Granting such other and further relief as the Court deems just, equitable, and proper to remedy the continuing harms caused by the NCAA's unlawful, arbitrary, and capricious

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, BROCK MURTHA, hereby demands a trial by jury on all issues so triable.

## CERTIFICATION AND CLOSING

Under Rule 11 of the Federal Rules of Civil Procedure, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint for Damages, Declaratory, and Injunctive Relief: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: February 20, 2026                           Respectfully submitted,


    /s/Thomas B Martin
Thomas B. Martin (Bar No. 18197)
MARTIN LAW PLLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
(202)390-7802 – Telephone
*Attorney for Plaintiff*

and


    /s/ Christine D. Brown
Christine Brown (*pro hac vice* pending)
Christine Brown & Partners, LLC
1700 East Putnam Avenue, Suite 400
Old Greenwich, CT 06870-1366
(203) 684-1834
christine@christinebrownsportslaw.com
*Attorney for Plaintiff*