IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**BROCK MURTHA**,

      Plaintiff,

vs.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**,

      Defendant.

Case No.:

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

COMES NOW Plaintiff, BROCK MURTHA, who by and through his attorney of record, hereby respectfully moves this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a temporary restraining order and preliminary injunction enjoining Defendant, NATIONAL COLLEGIATE ATHLETIC ASSOCIATION from enforcing its denial of Plaintiff's Season-of-Competition waiver and from treating Plaintiff as ineligible for intercollegiate competition. This Motion is supported by (1) the Declaration of B. David Ridpath, Ed.D, attached hereto, (2) Plaintiff's Declaration of Irreparable Harm: Professional, Academic, and Leadership Impact, attached hereto and also attached to the Complaint as EX. 6, (3) the pleadings and papers already on file with the Court, and (4) any oral argument the Court may entertain.

**INTRODUCTION**

1. Plaintiff, BROCK MURTHA (hereinafter "Plaintiff"), is a student-athlete at the United States Naval Academy (hereinafter "the Naval Academy"), a Division I member institution of Defendant, NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (hereinafter "NCAA"

1

or "Defendant"), who has been denied a Season-of-Competition waiver because of clerical errors committed by the Naval Academy and the University of Notre Dame, where Plaintiff was formerly enrolled as a student-athlete, that mischaracterized Plaintiff's participation in the 2020-2021 season. The substantive institutional errors were compounded by the Naval Academy's subsequent failure to provide Plaintiff with documentation of the denial and to notify Plaintiff of the 30-day period to appeal the denial.

2. Through no fault of his own, Plaintiff is being deprived of a finite and irreplaceable season of eligibility to compete in baseball during the 2025-2026 season, along with associated educational and developmental opportunities.

3. Plaintiff has simultaneously filed a Complaint for Damages, Declaratory, and Injunctive Relief in this action asserting a breach of contract claim stemming from Defendant's failure to fairly and reasonably enforce and adjudicate its rules and regulations and the consequential denial of Plaintiff's Season-of-Competition waiver and Request for Reconsideration Based on New Information.

4. Plaintiff incorporates the allegations of the Complaint by reference as though fully set forth herein for purposes of this Motion, including all factual allegations concerning the NCAA Bylaws, Defendant's conduct, and the resulting harm to Plaintiff.

5. Plaintiff seeks narrowly tailored emergency relief to allow immediate participation in competition while this action, and the accompanying Complaint

## FACTUAL BACKGROUND

6. Plaintiff began his collegiate athletic career during the 2020-2021 season at the University of Notre Dame, an NCAA Division I institution.

2

7. Plaintiff competed in six baseball games during the 2020-2021 season. He was a defensive replacement (late in the game) in five (5) games, never for more than one inning. He recorded one total at bat in a sixth (6th) game, again late in the game. He never started in a game, and the last game he played (April 9th) was the twentieth (20th) game of the season out of forty-seven (47) total games.

8. Plaintiff's last travel roster appearance at Notre Dame University was on April 9, 2021. After that April 9th game, he was never on the travel roster again for the remainder of the season, and did not even travel with the team for the deep post-season run in which the team made it all the way to the Super Regional against Mississippi State. He watched the entire post season from home.

9. Plaintiff was redshirted for the 2021-2022 season at Notre Dame University.

10. Plaintiff transferred to the Naval Academy in 2022.

11. Plaintiff competed as a student-athlete on the Naval Academy baseball team in the 2022-2023, 2023-2024 and 2024-2025 seasons.

12. In March 2025, the Naval Academy submitted a Season-of-Competition waiver (hereinafter "the waiver") on Plaintiff's behalf.

13. On March 28, 2025, Defendant denied the Academy's waiver submission on the ground that Plaintiff "competed in a game past the halfway point" of the University of Notre Dame's 2020-2021 season.

14. On March 31, 2025, Plaintiff received notification of Defendant's denial via email from the Naval Academy's compliance officer. Plaintiff was not provided with the statement of denial or notice of the 30-day appeal period.

15. Plaintiff did not receive documentation of Defendant's denial until May 20, 2025—after the 30-day appeal period had lapsed.

16. Upon review, Plaintiff discovered that the Naval Academy's initial submission contained incorrect information about his role and participation during the 2020-2021 season.

17. The Naval Academy's initial waiver submission mischaracterized Plaintiff as a "closer," implied ongoing roster activity, and incorrectly reported his final game date.

18. Naval Academy compliance staff obtained corrected participation records from the University of Notre Dame and transmitted the corrected information to Defendant.

19. On September 16, 2025, Defendant filed and reflected the corrected information in the record pertaining to its initial waiver decision; on reconsideration, Defendant again denied the waiver.

20. On January 5, 2026, the Naval Academy presented Defendant with an "Institutional Letter of Responsibility and Request for Acceptance of Out-of-Time Reconsideration," accepting full responsibility for its procedural and substantive errors.

21. Pursuant to NCAA policy and procedure, the Naval Academy based its Request for Reconsideration on the newly available and material evidence obtained from the University of Notre Dame that correctly reported Plaintiff's role and participation during the 2020-2021 season.

22. On February 10, 2026, Defendant denied the Naval Academy's request to submit an appeal outside of the 30-day appeal period, noting that such exceptions may be granted where the institution is able to demonstrate that "exceptional circumstances" caused the appeal to be filed beyond the 30-day period.

23. Based on Defendant's refusal to reconsider its decision notwithstanding the newly available and material evidence that demonstrates Plaintiff's participation reflects the criteria Defendant

has historically treated as qualifying for a Season-of-Competition waiver, specifically limited early-season participation and no record of competition beyond the halfway point, Plaintiff is currently rendered ineligible for competition in the 2025-2026 season.

## LEGAL STANDARD

24. Temporary restraining orders and preliminary injunctive relief is purposefully designed to maintain the status quo prior to adjudication on the merits of an action. *See* Fed. R. Civ. P. 65(a); *Mt. Valley Pipeline, L.L.C. v. 6.56 Acres*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013).

## ARGUMENT

25. Balancing the four factors outlined above, the Court should grant Plaintiff's motion for a temporary restraining order and/or preliminary injunctive relief against Defendant's enforcement of its denial of Plaintiff's Season-of-Competition waiver and from treating Plaintiff as ineligible for intercollegiate competition.

**A. Plaintiff is Likely to Succeed on the Merits**

26. As set forth in the Complaint and incorporated herein, Plaintiff challenges Defendant's denial of his Season-of-Competition waiver and subsequent refusal to reconsider its decision based on new information on the basis of a breach of contract, as well as arbitrary and capricious decision making.

27. The Naval Academy is a member of the NCAA Division I. As such, the Naval Academy has agreed to submit to and abide by Defendant's rules and regulations in exchange for the benefits of NCAA membership.

28. Plaintiff, as a student-athlete enrolled at the Naval Academy who is subject to the same NCAA rules and regulations, is an intended third-party beneficiary of the contractual relationship between the Naval Academy and Defendant.

29. Defendant has a contractual obligation to Plaintiff, as an intended third-party beneficiary, to enforce its rules and regulations fairly, consistently, and reasonably.

30. The undisputed evidence in this case establishes that institutional error—for which the Naval Academy has accepted full responsibility—resulted in the initial denial of Plaintiff's Season-of-Competition waiver, and that Plaintiff, as a student-athlete, reasonably relied on Naval Academy compliance staff and the NCAA process to protect his eligibility to participate in the 2025-2026 season.

31. The undisputed evidence in this case further demonstrates that Defendant is in receipt of Plaintiff's correct and accurate participation information, which was newly obtained and presented to Defendant per its "New Information" reconsideration policy.

32. Notwithstanding that Plaintiff's newly obtained, correct, and accurate participation information reflects the criteria Defendant has historically treated as qualifying for a Season-of-Competition waiver, Defendant refuses to reconsider or grant Plaintiff's waiver.

33. Defendant's refusal to reconsider or grant a Season-of-Competition waiver under these circumstances, and its acceptance of an outcome driven entirely by institutional error, is contrary to the text of its own bylaws, policies, and procedures and to basic, enforceable contractual duties of fair dealing and good faith.

**B. Plaintiff Faces Immediate and Irreparable Harm**

34. A season of intercollegiate competition—particularly a final, senior season of competition before a commission into the Marine Corps for a minimum of five years—is a finite opportunity; once the pre-season practice and competitive season passes, Plaintiff cannot recover it, regardless of any later ruling on the merits of his claims.

35. If the Court does not grant Plaintiff the requested injunctive relief, he will be unable to play for the Naval Academy in the 2025-2026 season. He will thus be denied his final opportunity "to practice the small-unit leadership that mimics a Marine Platoon" before commissioning and becoming "responsible for the lives of 30 to 50 Junior Enlisted Marines as their Platoon Commander." EX. 6, Plaintiff's Declaration of Irreparable Harm: Professional, Academic, and Leadership Impact, at 1.

36. The denial of this opportunity further extends to the loss of Plaintiff's "ability to demonstrate and refine the tactical competence required to lead by example" as well as to "build the authentic bonds that come from shared physical hardship during a game or a high-pressure practice." EX. 6, Plaintiff's Declaration of Irreparable Harm: Professional, Academic, and Leadership Impact, at 1.

37. Plaintiff has already lost an opportunity to practice with his teammates and participate in at least five (5) competitions that have taken place this season at the Naval Academy and unless he is assured that he will be eligible to play during the 2025-2026 season, Plaintiff will continue to lose this opportunity to practice, participate in competition, and become fully integrated with the team.

38. The missed practices and 2025-2026 competitions have, and will continue to, harm Plaintiff irreparably because each lost day constitutes a lost opportunity to develop and refine Plaintiff's

"professional competence and compassion"—skills that are essential to Plaintiff's forthcoming responsibility to lead Marines in "high-consequence environments." EX. 6, Plaintiff's Declaration of Irreparable Harm: Professional, Academic, and Leadership Impact, at 1. *See Braham v. NCAA*, 749 F. Supp. 3d 824, 837-838 (U.S. Dist. Nev. 2025) (finding denial of opportunity to play collegiate sports constitutes irreparable harm, citing loss of training and integration with team).

39. The foregoing harms are not compensable by money damages alone because they involve the loss of unique and critically important educational and professional development experiences.

40. Every additional practice and/or game missed before this Court acts compounds that irreparable harm.

**C. The Balance of Equities Strongly Favors Plaintiff**

41. The requested temporary restraining order and/or preliminary injunctive relief would permit Plaintiff to join his teammates, resume practicing for competition, and compete while this litigation proceeds, preserving the possibility of a full and meaningful remedy if Plaintiff ultimately prevails on the merits.

42. Defendant faces no substantial harm from the granting of temporary and injunctive relief such that the burden on Defendant is minimal. Plaintiff's participation in baseball during the pendency of this action does not prevent Defendant from enforcing its rules prospectively or seeking modification of the order.

43. By contrast, if relief is denied at this stage of the litigation, Plaintiff permanently loses the opportunity to participate in the 2025-2026 season, and no later order can restore that time.

**D. The Public Interest Supports Granting Plaintiff's Motion**

44. The public has an interest in ensuring that Defendant, acting as the central governing body of intercollegiate athletics in the United States with over 1,200 member institutions, administers eligibility rules fairly, consistently, and in a manner that does not penalize student-athletes for institutional clerical errors and procedural failures.

45. Under the circumstances of this case, granting relief would reinforce the principle that student-athletes should not lose a season of competition for errors and failures wholly outside of their control, including the misreporting of participation information and failure to provide notice as to the expiration of critical appellate rights.

46. The instant requested order promotes confidence in the integrity of collegiate athletics and demonstrates a commitment to protecting students from institutional errors that are outside of their control but dramatically alter their educational and professional trajectories.

**E. Defendant Must Be Enjoined from Enforcing the Rule of Restitution**

47. Pursuant to Bylaw 12.9.4.2—commonly known as the "Rule of Restitution"—the NCAA Board of Directors may take action against a student-athlete and member institution he or she attends (and, consequently, the student-athlete's teammates) if the student-athlete and member institution rely on a court-issued temporary restraining order or preliminary injunction enjoining unlawful conduct by the NCAA and mandating that the student-athlete be permitted to participate in athletic competition if the temporary restraining order or preliminary injunction is later revoked for any reason. *See* EX 1. NCAA, 2025-2026 Division I Manual, Bylaw 12.9.4.2, at 57-58 (August 30, 2025).

48. The Rule of Restitution is intended to discourage student-athletes and member institutions from challenging the NCAA's improper rules and rulings by making it effectively impossible

for student-athletes and member institutions to rely on validly entered court orders and to obtain meaningful injunctive relief.

49. Given the operation of the Rule of Restitution, even if a student-athlete obtains a temporary restraining order or preliminary injunction on the basis that an NCAA ruling is likely invalid such that the NCAA is enjoined from enforcing its unlawful restraint, member institutions typically do not allow the student-athlete to participate in athletic competition.

50. Based on the foregoing, courts have enjoined Defendant from enforcing the Rule of Restitution against student-athletes and their respective institutions who rely on a temporary restraining order or preliminary injunction when participating in intercollegiate athletics. *See, e.g., Ohio v. NCAA,* 706 F. Supp. 3d 583, 601-02 (N.D.W. Va. 2023).

51. For the requested preliminary injunctive relief to be effective, this Court must enjoin Defendant from enforcing the Rule of Restitution for complying with an order granting that relief.

## SECURITY

52. Plaintiff respectfully requests that this Court not require security prior to issuing a temporary restraining order or preliminary injunction under Rule 65(c) of the Federal Rules of Civil Procedure in this case. In the event that this Court issues initial injunctive relief, Defendant will not suffer quantifiable monetary harm in compliance therewith because the requested injunctive relief does not require Defendant to take any affirmative action. *See Ohio*, 706 F. Supp. 3d at 602.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order maintaining the status quo by enjoining Defendant from enforcing its denial of Plaintiff's Season-of-Competition waiver and from treating Plaintiff as ineligible for intercollegiate competition

pending entry by the Court of a final judgment in this action. Plaintiffs further respectfully request that this Court enjoin Defendant from retaliating against Plaintiff or the Naval Academy by taking action against them under the Rule of Restitution for conduct allowed by any preliminary injunctive relief that this Court may issue.

Dated: February 20, 2026

                              Respectfully submitted,

                              __*/s/ Thomas B. Martin*_____
                              Thomas B. Martin (Bar No. 18197)
                              MARTIN LAW PLLC
                              5335 Wisconsin Avenue, NW
                              Suite 440
                              Washington, DC 20015
                              (202)390-7802 - Telephone

                              *Attorney for Plaintiff*

                              and


                              __*/s/ Christine D. Brown*_____
                              Christine D. Brown (*pro hac vice pending*)
                              Christine Brown & Partners, LLC
                              1700 East Putnam Avenue, Suite 400
                              Old Greenwich, CT 06870-1366
                              (203) 684-1834
                              christine@christinebrownsportslaw.com

                              *Attorney for Plaintiff*