IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**BROCK MURTHA,**

      Plaintiff,

vs.

**NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,**

      Defendant.

Case No.:

---

## AFFIDAVIT OF B. DAVID RIDPATH Ed.D

**STATE OF OHIO**

**COUNTY OF ATHENS**

    PERSONALLY appeared before me the undersigned authority in and for the Jurisdiction aforesaid, the within named B. DAVID RIDPATH, Ed.D. who having been first by me duly sworn, stated on oath the following:

    1.    My name is B. David Ridpath, Ed.D. and my address is 107 Main Street, The Plains, Ohio 45780

    2.    I am over the age of eighteen (18); I am of sound mind and body; and I can compile this Affidavit. I have knowledge of the facts and circumstances surrounding this case(s) and the matters to which I am attesting in this Affidavit. A copy of my curriculum vitae is attached hereto.

1

3.    I am a tenured Full Professor of Sport Business in the College of Business at Ohio University in Athens, Ohio. Ohio University is a member of the Mid-American Conference, ("MAC"). My primary research interests lie in the governance of intercollegiate athletics, athletic compliance, and NCAA rules and regulations to include the student-athlete reinstatement, the NCAA waiver policies & procedures, and the enforcement and infractions processes.

4. Counsel for the plaintiff has retained me as an expert witness in the field of institutional, NCAA & various athletic conference Compliance Bylaws/Rules & Regulations as applied to NCAA Division I Intercollegiate Athletics juxtaposed with the existing NCAA enforcement process, student-athlete reinstatement process, NCAA medical & extension of eligibility waivers and the reliability of those procedures.

5. My qualifications to serve as an expert witness in the field of Institutional, NCAA & various athletic conference Compliance, Bylaws/Rules & Regulations and policies as applied to NCAA Division I Intercollegiate Athletics, are set forth more fully below and in my curriculum vitae, attached hereto.

6. I earned a Masters of Sports Administration and Facility Management degree from Ohio University in 1995. I was an assistant men's wrestling coach at Ohio University during 1994-95 seasons.

7. I worked in the athletic department at Weber State University in Ogden, Utah, for three years from 1995-1997 as Assistant Director of Marketing and Promotions, Director of Internal Operations, and Director of Compliance. I was also involved with investigating and reporting Big Sky Conference and NCAA violations regarding violations in the Weber State Men's Basketball Program.

2

8. I then spent seven plus years at Marshall University in Huntington, West Virginia serving as an Adjunct Professor of Sport Management and Marketing, Director of Judicial Programs and Assistant Athletic Director for Compliance and Student Services. Marshall University was, at the time, a member of the Mid-American Conference. As part of my student service responsibility at Marshall University, I was the administrative supervisor of the Athletic Training and Medical Services staff. While at Marshall, I was heavily involved in all athlete waivers submitted for assorted reasons to include academic eligibility, transfer waivers, relief from NCAA penalties, extension of eligibility, medical red shirt & medical hardship waivers. I reported several MAC conference and NCAA violations to the Mid-American Conference in accordance with established NCAA policies and procedures. I am familiar with the processes and procedures regarding compliance with NCAA and various conference rules.

9. I then spent two years directing graduate sports administration at Mississippi State University before returning to Ohio University in my present capacity in September of 2006. I also served as Interim Associate Athletic Director for Compliance at Ohio University for three months in April-June of 2007.

10. I currently advise coaches, athletes and administrators on NCAA compliance issues, waivers, eligibility issues, NCAA governance policies and procedures and on the NCAA enforcement and infractions process. This includes serving as non-legal counsel during NCAA COI hearings and interviews.

11. I received a Doctor of Education in Higher Education Administration from West Virginia University in May 2002. I have been used as an expert in litigation involving college sports in several high-profile civil cases (appended on vita). I have testified before the *Knight*

3

*Commission on Intercollegiate Athletics*, and I am regularly quoted on issues in college sports in media such as ESPN, The Paul Finebaum Network, the New York Times, The Wall Street Journal, and The Chronicle of Higher Education to name a few. I also testified in front of the *U.S. House of Representatives sub-committee on the Constitution* regarding NCAA enforcement and infractions and the athlete reinstatement process in September of 2004.

12. Weber State University, Ohio University, Marshall University, and Mississippi State are Division I members of the National Collegiate Athletic Association (NCAA) and are bound by its standards and rules.

13.    In preparing this affidavit, I have reviewed the following documents:

- Draft Murtha v. NCAA Complaint
- Draft Motion for Temporary Restraining Order, Murtha v. NCAA
- Reconsideration Memorandum filed by the Naval Academy Athletic Association on January 5, 2026, with appendices
- Institutional Letter of Responsibility filed by the Naval Academy Athletic Association on January 5, 2026
- Statement of Support presented by Dr. Christine Cooper, U.S. Naval Academy
- NCAA Reconsideration Request Denial
- Murtha Declaration of Irreparable Harm

4

**Summary of Opinion**

1.      As one who has significant experience in the NCAA waiver process, to include eligibility and legislative relief waivers via preparation and adjudication within existing NCAA processes, I have seen several examples of eligibility waiver case that should have been approved through existing athletic conference and NCAA procedures, and that demanded fair reconsideration. In the instant case of Brock Murtha, MIDN USN, it is certainly one of the stronger cases I have seen that should have been granted and exception to seasons of competition by the NCAA. As an expert often used in cases such as this, I am perplexed that this waiver was not easily reconsidered and approved due to circumstances beyond Murtha's control, the admitted error by the Naval Academy (USNA) and the contemporaneous documentation provided. Murtha's academic and athletic documentation, as noted in the complaint, demonstrates that his participation falls within the parameters that the NCAA has historically treated as qualifying for a Season(s)-of-Competition waiver (i.e., limited early-season participation and absence from competition beyond the halfway point). Even a cursory view of the renewed Eligibility Waiver and Reconsideration Memorandum submitted by the Naval Academy Athletic Department also demonstrates extraordinary circumstances that should warrant an additional season of competition for Murtha.

2.      As the complaint notes, Murtha's participation totals are the sole basis cited by the NCAA in denying waiver relief. Murtha's participation during the 2020-2021 season, as a member of the baseball team at Notre Dame, *never came close to the halfway point of the season* and was erroneously represented as a season of competition by the Naval Academy Athletic Department without any knowledge or input from Murtha. Further, Murtha was never provided

the opportunity within the prescribed appellate period to even know that the waiver had been denied. It was not until almost one (1) month after the appeal period ran that Murtha became aware that he was a victim not once, but twice, of circumstances outside his control because of his required and reasonable reliance on the institution's control over his submission and the NCAA's reliance on erroneous information in consideration of the amount of participation.

3.      Murtha followed the advice of competent athletic administration authorities who inaccurately reported Murtha's role on the team in the first instance and then failed to report the denial of the waiver until after the 30-day appeal window had run. Not only did Murtha not participate past the halfway point of the 2020-2021 season and not only did he have zero knowledge about these errors, but the repeated errors that were made *were not in any way within the control of Murtha to decide (emphasis added)*. Not only is it beyond any doubt that the evidence provided to the NCAA about the number of games that he participated in at Notre Dame was devastatingly incorrect, and not only is it beyond any doubt from the evidence provided that Murtha was not afforded any appeal opportunity, the Naval Academy, boldly acknowledged and owned its responsibility for failing Murtha and provided more than satisfactory information to the NCAA to demonstrate the circumstances outside of Murtha's control. This is not to blame the Naval Academy for the loss of eligibility but instead highlight that the athlete should not be punished for other's mistakes especially when those mistakes represented incorrect information regarding participation. I adamantly disagree with the findings of the NCAA Student Athlete Reinstatement Committee that Murtha does not meet the criteria for an additional season of competition based upon existing NCAA rules and policy.

4.      Unfortunately, Murtha has exhausted all NCAA waivers and appeal options

6

available to him, which leads him to seeking justified relief in the courts. It should never have gone this far in my opinion, but since it has, I see no other reasonable option for him but to be granted relief by this honorable court.

5.      It cannot go without saying that the severity of the harm to Murtha, who faces five committed, non-modifiable, years defending our country, is one of irreparable harm that is not often seen. This is not about money. The only thing this is about is a level of harm that can only be remedied with swift and significant action. What I continue to come back to in cases such as these, is that this is an exact set of circumstances for which the waiver process was created for by the NCAA to begin with. While there is chaos and uncertainly currently surrounding college sports, this set of circumstances stands apart. Murtha should not be punished by a directive from the NCAA to issue a blanket denial to eligibility waivers in order to gain some false sense of stability. In my opinion, the NCAA should have embraced this waiver as an opportunity to demonstrate the intended desire to support college athletes and allow for equitable access to their athletic careers and educational futures. Cases like Murtha's are precisely what the NCAA waiver and appeal process are there to accomplish. Waivers are there to account when established rules, or lack of consistent rule application, cannot fit complex realities and situations like Murtha's.

6.      The January 5, 2026, Reconsideration Memorandum submitted by the Naval Academy Athletic Association does an excellent job of detailing the circumstances outside Murtha's control related to the original reporting of participation to the NCAA. Murtha also reported to me, significantly, that in the six (6) games that he did participate in at Notre Dame, he was a defensive replacement (late in the game) in 5 games, never for more than one inning.

7

He recorded one total at bat in a 6th game, again late in the game. He never started in a game, and the last game he played (April 9th) was the 20th game of the season out of 47 total games. After that April 9th game, he was never on the travel roster again for the remainder of the season, and he did not even travel with the team for their deep post-season run in which that team made it all the way to the Super Regional against Mississippi State. Murtha watched the entire post season from home. During his two years at Notre Dame, Murtha missed almost two (2) full seasons of games, and ultimately gave up the entirety of sixty (60) credits that he had earned, in order to start all over again as a first year at the Naval Academy in reliance upon the representation that he would have four (4) years of eligibility. That sacrifice, in and of itself, is a testament to who this young man is at his core and represent circumstances completely out his control.

7.    Historically and overall, NCAA Division I athletics typically are governed by a *"Five Year Eligibility Clock"* for all athletes. This means generally that college athletes in those divisions have four years of available competition within five years after the initial date of enrollment in any one sport. The fifth available year is almost always used as a practice or "redshirt year" for incoming freshman or transfers with no outside competition permitted during the redshirt year, but the athlete is allowed to be on athletic aid and may practice with team. Currently in Murtha's sport of NCAA Division I college baseball, a threshold of a halfway point of participation in total season scheduled games may not be exceeded for an additional year of eligibility to be granted in most cases. In addition, any competition in the second half of a baseball season triggers a season of competition. Murtha only competed in six games, the last of

8

which was before the halfway point and never competed in a game in the second half of the season.

8.    If either of these metrics are exceeded, it usually requires extraordinary circumstances completely out of control of the athlete to obtain a waiver of the eligibility clock or to grant an additional season of competition. Murtha could not submit the waiver of his own volition in that the NCAA bylaws require that it be submitted by the institution. Murtha followed all the rules and met all the requirements and admitted misrepresentations of facts, later clarified, took place entirely outside of his control. These circumstances are certainly extraordinary.

9.    It is also important to look at this case in the proper light of the athlete, and what they have the power to do in their tenuous position of not being able to advocate for themselves in the process. It is not rational to place any responsibility upon Murtha for the erroneous information provided to the NCAA or the denial of an opportunity to assess appellate opportunities when the information submitted to the NCAA was never under his control and was never within his control during a period of time during which he could have identified the mistaken representations. In cases like Murtha's, the athlete must rely upon the institution to advocate for him, exclusively, as he is precluded from the process under the NCAA's own bylaws. Murtha did not have any option available to him and was specifically removed from the waiver process per NCAA policy, and therefore it cannot be reasonably inferred that he alone as an athlete had any control whatsoever over the circumstances.

10.    In other words, the athlete will listen to and follow the directives of the coaching staff, administrators, and the institutional personnel. Murtha was following the advice of competent athletic administrators who erred in their representations of the facts in the waiver, all

9

while he trusted and relied upon the process put in place by the NCAA which requires that

institutions stand in place of the athlete in advocating for eligibility.

11.    NCAA waivers and waiver policies are available to grant additional or even

multiple seasons of eligibility based on certain criteria which very much apply in the instant case,

such as circumstances ***beyond the athlete's control under Division I NCAA Bylaws 12.8.1.7 and***

***12.8.1.7.1.*** Subsection (b)(3) specifically applies to Murtha's appeal. Potential avenues for a

college athlete to seek relief and gain an additional season of competition include:

> a. The athlete did not use a season of competition and was otherwise eligible to
> compete and the athlete was deprived of the opportunity due to circumstances
> beyond the control of the athlete and/or institution.
>
> b. Circumstances beyond the control of the athlete and do not cause a season of
> competition to be used include:
>
>> 1. Medical issues concerning the athlete supported by contemporaneous
>>    medical documentation that demonstrates that the athlete was unable
>>    to participate due to medical condition.
>> 2. Athlete is unable to participate as a result of life threatening or
>>    incapacitating injury or illness of a member of the athlete's immediate
>>    family.
>> 3. ***Reliance of the athlete on clearly erroneous information from a***
>>    ***specific academic authority that caused issues with understanding of***
>>    ***eligibility.***
>> 4. Extreme financial difficulties
>> 5. Extreme events like natural disasters etc.

12.    Subsection (b)(3) clearly applies because Murtha relied on erroneous information

from an administrator with authority that negatively affected his eligibility. It is erroneous

information that was relied on from specific institutional authority, and it is dramatically

affecting his eligibility. While there are things that do not apply as extenuating circumstances to

meet the threshold of a waiver and are considered within athlete's control such as not meeting

academic standards, the NCAA also has a catch-all, namely, **Bylaw of 12.8.1.7.1.3**

***Circumstances of Extraordinary or Extreme Hardship*** to ostensibly assist athletes like Murtha

who have been denied relief at lower levels to seek one last option. This means that the

*Committee on Student Athlete Reinstatement* (the committee that reviews waiver requests if the

full time NCAA S/A Reinstatement staff denies relief and athletes seek another avenue of redress

now known as the Athletics Eligibility Committee), ***reserves the right to accept or refuse any***

***and all requests that do not meet the specific waiver criteria listed under the aforementioned***

***bylaws and hardship criteria for additional consideration.*** Sadly, even this last resort was not

enough for Murtha to get the justified and needed relief so he can finish his last season of

eligibility despite the totality of extraordinary and extenuating circumstances replete in the

record because he was not advised of the denial of his waiver in time to file a timely appeal.

      13.    Even with the current inconsistencies and inexplicable reasoning for denying

Murtha's request for relief at all stages, the NCAA waiver process used to be worse for the

athlete, which makes the denial of this case even more difficult to understand as a stated core

mission of the NCAA is to put the college athlete first. A stated goal of the NCAA in the early

2000's and in its strategic plan, implemented by then NCAA President Myles Brand, was to

increase fairness and transparency for college athletes, most notably in eligibility, enforcement,

and waiver criteria which was considered by many as *grossly unfair, heartless and intractable.*[1]

Brand called it after implementation ..."*a "student-athlete-first" approach that gives student-*

*athletes the benefit of the doubt when adjudicating waivers or reinstatement requests has led to*

---

[1] I can attest that filing waivers for eligibility and medical issues in the 80's, 90's and early 2000's was virtually an exercise in futility. Few were approved and there were no consistent criteria applied to waivers that were approved. It was a very difficult system for college athletes and former NCAA President Brand recognized that it needed to change to increase transparency and fairness.

11

*more appropriate outcomes."* However, it is important to note here that even after this new philosophy was implemented, to this day the individual athletes do not have the right of direct recourse to file or appeal any waiver through NCAA processes on their own. This must be done by the institution and in some cases the institution will not move forward with a waiver request even if the athlete asks for it, leaving the athlete the only option of pursuing relief through the courts. The waiver process itself is still flawed from a due process perspective in that the athletes are not parties to any negotiations or review, have no direct right of appeal if the school does not agree to support them, and rarely, if ever, are asked to speak on their own behalf during the process. It is essentially a complete paper review, and, in my expert opinion, it is not a fair process to adjudicate a waiver decision but regardless, it should have worked for Murtha.[2]

14.    While former NCAA President Brand's efforts made an intractable NCAA waiver and reinstatement process more efficient and fairer for many, it also led to even more arbitrary and inconsistent decisions on player eligibility waivers that were often mind bogglingly different from existing case precedent as in this case, varied from athlete to athlete and depended on who was on committee(s) or in charge of managing the waiver through the system.  Currently because the NCAA and its college sports governance system is evolving, specifically with regard to restricting college athlete eligibility and challenging those rules through the courts, the NCAA has vowed to keep fighting these cases with "everything they got."[3] In 2022, the NCAA's own Legislative Relief/Review Committee, which oversees the NCAA Student Athlete reinstatement staff and waiver committees, recommended that the full time NCAA national office

---

[2] Jeremy Bloom testimony on reinstatement waiver process before the U.S. House Subcommittee on The Constitution. https://www.youtube.com/watch?v=kFSTXiSzdHA
[3] See comments of current NCAA President Charlie Baker. He states, "We don't have a choice. That's why we're up to our eyeballs in court cases. We're going to fight them all."

reinstatement staff *deny waivers requesting additional seasons of competition.* To which the Athletics Eligibility Committee (formally known as the Student Athlete Reinstatement Committee) stated based on this guidance, it would be *inclined to deny* waivers such as Murtha's.[4] This is unfair, arbitrary and capricious and does not even give the athlete a fair chance at a just decision, it is likely already decided as a denial.

15.     This has also changed the waiver process from Dr. Brand's vision to one that is much more adversarial than in the past and not erring on the side of the athlete. Baker claims that if these eligibility cases are granted or are won in court, it can damage the ability of prospective athletes to move up from high school into college or take away opportunities from others. However, this statement ignores several realities of the business as it is more often than not a system of getting the best to win rather than providing broad based educational and athletic opportunity. Teams are always going to take the best players regardless of future prospects that may or may not be ready to compete at an elevated level. The Naval Academy is holding a spot for Murtha because of his ability. They are not giving that spot to anyone else, and they want him to continue and complete his academic and athletic career at the Naval Academy. Colleges and universities in the past routinely would cut players or not renew scholarships if a better player came along. More often, when new coaches are hired they bring many players with them that eliminate opportunities for athletes already on rosters as they are replaced with transfers the new coach brings in.[5] Baker's words are not about fairness for future athletes, they are about control,

---

[4] See NCAA Legislative Review Committee minutes, February 2022 regarding seasons of competition: Five year rule legislation (NCAA Bylaw 12.8)

[5] One example of this is when Deion Sanders become the new head football coach at the University of Colorado. He told the roster he was inheriting at Colorado that, "we got a few positions already taken care of because I'm bringing my luggage with me. So, I want y'all to get ready to go ahead and jump in that (transfer) portal and do whatever

generating revenue and not what is best for the athlete. Ironically, The NCAA is even allowing

professional athletes who were drafted, competed and compensated as professional athletes in

the sport of basketball actual eligibility to compete in the NCAA.[6] In no way does this open up

the 'critical pipeline' for others to compete in college sports that Baker claims is needed when

professional athletes and so many others who have been approved in the waivers process are

taking those so-called coveted spots. Positions on college athletic teams are by ability and often

upperclassmen are replaced by more talented newcomers. What about their opportunity? There is

no defined pathway or pipeline that the NCAA is alluding to as a reason to deny a waiver such as

this. Simply put if an athlete is talented enough, there will always be a position for them on any

team.

      16.     From my experience I am shocked that the Requested Reconsideration waiver

was not approved based on the new evidence presented and the Institutional Statement of

Responsibility. Murtha relied on the NCAA's bylaw requiring the institution to submit the

waiver. Further, had Murtha received the decision from the institution under the NCAA's

prescribed process, he could have brought the mistaken role and participation representation to

the NCAA as a matter of course. It is the circumstances clearly outside of his control that is

holding him back and clearly he presents extraordinary circumstances. While there need to be

measurable standards, from a practical matter and in totality, Murtha has still missed essentially

---

you're gonna get because more of you jump in, the more room you make." See
https://nypost.com/2022/12/05/colorado-coach-deion-sanders-tells-players-to-enter-transfer-portal/#:~:text=Deion%20Sanders%20isn't%20messing%20around%20at%20Colorado:%20'Go%20ahead%20and%20jump%20in%20that%20portal'&text=Deion%20Sanders%20kicked%20off%20his%20tenure%20as,the%20roster%20look%20to%20the%20transfer%20portal.
[6] See https://sports.yahoo.com/mens-college-basketball/article/why-the-ncaa-is-unwilling-to-fight-to-keep-pros-out-of-college-basketball-160216784.html?guccounter=1.

two full seasons of competition beyond his control, which is generally what is needed to gain another year of competition through the hardship waiver process. As one who has extensive experience in the NCAA waiver process and specifically hardship waivers, I have seen barely a handful that are as, or nearly, robust as an example of a waiver that should have been approved immediately through existing NCAA processes than this one.

17.    If the NCAA genuinely believed in its mantra of erring on the side of the athletes in its waivers and exceptions system, this was quite an easy one to grant and is in the best interest of the athlete. In essence, it has become a David v. Goliath scenario where the powerful NCAA is using the very money generated by athletes to fight them in court in an attempt to preserve an antiquated system that is unfair to the athlete. In the case of Plaintiff Murtha, he has significant mitigating and extraordinary circumstances that warrant an additional year of competition under current NCAA rules, and I strongly believe this relief should be granted by this honorable court. He is not asking for unlimited eligibility, he is only asking for less than four (4) months that he would have received if he had been able to control the information that was originally provided to the NCAA who by its own policies and procedure denied him that opportunity. He has demonstrated significant documentation and extenuating circumstances that warrant another season of competition. Undoubtedly and in my opinion, the examples of things that happened to him laid out in the complaint and the Naval Academy waiver are outside his control, meet and/or exceed NCAA thresholds for approval, and this hardship waiver for an additional year should have been granted. In my experience with extenuating circumstance waivers, I have seen few that so clearly meet the criteria such as this one. I personally had athlete waivers approved via the same processes for much less. I fundamentally disagree with the assessment and findings by

15

the NCAA in this case. At the very least, extenuating circumstances should be viewed in the light most favorable to the athlete and he should be granted this additional year.

18.     The defendants' joint and individual actions, and failure to find what a reasonable person would do in the conduct of serious affairs, are preventing plaintiff Murtha from athletic vocation as other similarly situated NCAA athletes have been and currently are allowed to do via the waiver process and who were granted an extra year-or even more eligibility for a myriad of reasons. It is my opinion that the NCAA cannot justify its position that this extension would harm the association as numerous extensions and existing rules already extend the eligibility clock for dozens of current NCAA athletes, not to mention recent court decisions that granted temporary injunctions to the same. On the contrary, the only person that will be harmed immeasurably in the instant case is Murtha in several ways to include educationally, athletically, professionally, and as a member of our country's military tasked with protecting the lives of millions.

19.     I strongly agree that the relief requested by the plaintiff in the complaint should be granted based on exceeding the waiver and extenuating circumstances requirements in existing NCAA bylaws along with the unjust limitations when other similar requests for an additional year(s) of eligibility have been granted by the NCAA.

16

20.    I reserve the right to supplement this affidavit when/if additional discovery is available.

FURTHER AFFIANT SAITH NAUGHT.

_____
B. DAVID RIDPATH, Ed.D.

SWORN TO AND SUBSCRIBED before me, this the _20_ day of ___February___, 2025.

_____
(NOTARY PUBLIC

My Commission Expires:

_____9/6/27_____

Linda Johnston
Notary Public, State of Ohio
My Commission Expires:
September 06, 2027

17