UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| BROCK MURTHA,<br><br>　　　Plaintiff,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:26-cv-00719-JRR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF JERRY VAUGHN IN SUPPORT OF DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S OPPOSITION TO PLAINTIFF's MOTION FOR A TEMPORARY RESTRAINING ORDER**

I, Jerry Vaughn, declare the following pursuant to 28 U.S.C. § 1746:

1.　My name is Jerry Vaughn. I am a resident of Indianapolis, Indiana.

2.　I am currently the Managing Director of Division I Governance and Member Services at the National Collegiate Athletic Association ("NCAA"). I make this declaration of my own personal knowledge or based on documents I have reviewed and, if called on to do so, could testify competently to these facts under oath.

3.　I received a bachelor's degree in sport management from North Carolina State University and a master's degree in sport administration from Canisius College.

4.　I have worked for the NCAA for more than twelve years and have held my position as Managing Director of Division I Governance and Member Services since January 12, 2026. In this role, as well as in my prior roles with the NCAA, I have provided oversight of the staff responsible for administering the athletics eligibility and waiver process. In my prior role, that oversight included the team that managed waiver requests for all three NCAA divisions, including

extension of eligibility waivers, hardship waivers, and season-of-competition waivers. Additionally, I have supported membership governance bodies including the NCAA Division I, II, and III Committees on Student-Athlete Reinstatement and various working groups that have reviewed the topic of eligibility. In the regular performance of my job responsibilities, I am familiar with the business records created and maintained by the NCAA relating to student-athlete eligibility waivers, including the one relating to Mr. Brock Murtha. These records, and all of the exhibits attached to this declaration, were made at or near the time by, or from information provided by, persons with knowledge of the activity and the transaction reflected in such records and were maintained in the ordinary course of business activity conducted regularly by the NCAA. It is the regular practice of the NCAA to make these records. Through my employment with the NCAA, I acquired knowledge of how information is made and maintained on the computer systems used by the NCAA to make these records. In connection with making this declaration, I have acquired personal knowledge of the matters reflected in those business records by personally examining them.

5. The NCAA is a voluntary, self-governing and unincorporated association of public and private colleges, universities, and conferences that administers athletic competition for its members. The NCAA has multiple members located in the State of New York. Its nearly 1,100 schools span three divisions: Division I, Division II, and Division III. Each division adopts its own rules and operating guidelines through a structured legislative and governance process. As a result, the policies regulating college athletics represent the collective will of a broad and varied membership.

6. Division I consists of roughly 350 colleges and universities. These member institutions together adopt the Division I Manual ("DI Manual"), which sets forth the fundamental

policies and rules ("Bylaws") that govern Division I athletic competition for more than 180,000 student-athletes. The Bylaws include eligibility requirements for student-athletes and are subject to an annual process of review and formal adoption.

7. Based on my experience, I am familiar with the NCAA's Division I Bylaws and policies for student-athlete eligibility waivers. The Bylaws that apply to a particular application or petition are the Bylaws in place at the time of the relevant events underlying the application or petition.

8. For example, the United States Naval Academy ("Naval Academy") submitted a request on behalf of Mr. Murtha for a "Season-of-Competition Waiver—Competition While Eligible" and the season underlying the request is the 2020-21 season. As a result, the 2020-21 Division I Bylaws apply to Mr. Murtha's position. That said, I understand that Mr. Murtha's lawsuit refers to the 2025-26 Division I Bylaws. As a practical matter, the substantive provisions of the "Season-of-Competition Waiver–Competition While Eligible" from the 2020-21 Division I Manual, codified in Bylaw 12.8.6, are substantively the same as those codified in the 2025-26 Division I Manual, codified in Bylaw 12.6.6.

9. A true and correct copy of the 2020-21 Division I Bylaws is attached to my declaration as **Exhibit A**.

10. A true and correct copy of the 2025-26 Division I Bylaws is attached to my declaration as **Exhibit B**.

11. "DI Manual" and "Bylaws" from this point forward refer to the 2020-21 DI Manual in Exhibit A.

12. In college baseball, when a student-athlete participates in any amount of regular season intercollegiate competition, that counts as one of the student-athlete's permitted four

seasons of competition. The "Four-Seasons" Rule (or "Seasons of Competition" Rule) is set forth in Bylaw 12.8. It states that "[a] student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport."

13. "Intercollegiate competition" occurs in baseball when a student-athlete represents the institution in any contest against outside competition, regardless of how the competition is classified (*e.g.*, scrimmage, exhibition, or joint practice session). *See* Bylaw 12.02.6.

14. In narrowly defined situations, the DI Manual permits a "waiver" of the Four-Seasons Rule, thereby potentially allowing a student-athlete an additional season of competition. The waiver process is intended to provide a fair remedy in situations where a student-athlete's loss of a season of competition was due to unusual or unintended circumstances.

15. For example, Bylaw 12.8.6 ("Season-of-Competition Waiver–Competition While Eligible") states that a student-athlete "may be granted an additional season of competition by the Committee on Student-Athlete Reinstatement in a case in which the student-athlete participated in a limited amount of competition while eligible due to a coach's documented misunderstanding of the legislation or other extenuating circumstances." This means the NCAA can discount a season of competition if the student-athlete's limited playing time was caused by a coach's mistaken belief about the eligibility rules or another exceptional factor.

16. For ease of reference, a true and correct copy of Bylaw 12.8.6 is attached as **Exhibit C**.

17. Under Bylaw 12.8.6.2, a "Coach's Documented Misunderstanding" occurs where "[t]he student-athlete participated as a result of good faith, reliance on a coaching staff member's decision to put the student-athlete in an alumni contest, exhibition contests, scrimmages, or nonchampionship segment contests based on the coach's documented misunderstanding of NCAA

legislation[.]" For example, a freshman baseball player is told by his coach that participating in a fall exhibition game against a local semi-pro team will not count as competition, when in fact, the DI Manual counts the exhibition as competition. *See* Bylaw 12.02.6. Or a soccer player is told that her participation in a preseason scrimmage against a nearby college does not count as competition, when in fact, it does. *See id.*

18. When the "Coach's Documented Misunderstanding" prong of the season-of-competition waiver is invoked, the student-athlete must show that their final appearance in the relevant season occurred "prior to the completion of the first 20 percent" of the season, and that they "did not compete in more than two events or 10 percent (whichever number is greater) of the institution's schedule or completed events in his or her sport" during that same season. Bylaw 12.8.6.2(b), (c).

19. The second basis for a season-of-competition waiver—"other extenuating circumstances"—includes, but is not limited to, "fail[ure] to complete the entire season of competition at the institution as a result of a life-threatening injury or illness suffered by a member of the student-athlete's immediate family," or "extreme financial difficulties." Bylaw 12.8.6.3(a), (b). When this prong is invoked, the Bylaws say that a waiver may only be granted if the student-athlete's participation occurred during the first half of the season, and if they played 30 percent or less of the season. *See* Bylaw 12.8.6.3.1.

20. In cases where a student-athlete does not meet the aforementioned criteria—*i.e.*, his limited playing time was not caused by "a coach's misunderstanding," a family member's "life-threatening injury or illness," or "financial difficulties"—the Committee on Student-Athlete Reinstatement has the authority to review and grant a waiver based on "additional documented extenuating circumstances." Bylaw 12.8.6.

5

21. A related rule, the "Five-Year Rule," mandates that the student-athlete's four seasons of competition occur within a five-year window: "A student-athlete shall complete his or her seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution." Bylaw 12.8.1.

22. The Five-Year Rule has its own waiver criteria. *See* Bylaw 12.8.1.7. Bylaw 12.8.1.7.1, which permits a waiver of the five-year period of eligibility when a student-athlete has been denied more than one season of participation in his or her sport for reasons that are beyond the control of the student-athlete or the institution. One of the "denied participation opportunities" may be an institutional decision to redshirt the student-athlete under Bylaw 12.8.1.7.1(a). The Bylaws also define circumstances that are beyond the control of a student-athlete or institutions and circumstances that are within their control in Bylaws 12.8.1.7.1.1 and 12.8.1.7.1.2 for purposes of qualifying for such a waiver.

23. In short, the Four-Seasons Rule sets the number of competitive seasons, and the Five-Year Rule sets the window in which those seasons must be played. If both limits are reached, the student-athlete must obtain waivers of both rules to remain eligible to compete.

24. Waiver requests are submitted by NCAA member institutions on behalf of student-athletes. The United States Naval Academy is an NCAA Division I member institution.

25. On March 19, 2025, the Naval Academy submitted a waiver request on Mr. Murtha's behalf under Bylaw 12.8.6 ("Season-of-Competition Waiver—Competition While Eligible"), specifically under the "Other Extenuating Circumstances" prong. A true and correct copy of the waiver request is attached as **Exhibit D**.

26. The NCAA fully considered the waiver request and supporting documentation in

accordance with its regular practice. That supporting documentation included Mr. Murtha's "2021 Notre Dame Baseball Overall Statistics" (**Exhibit E**); Notre Dame's 2020-2021 baseball schedule (**Exhibit F**); Mr. Murtha's Personal Statement (**Exhibit G**); his Notre Dame transcript (**Exhibit H**); and his Naval Academy transcript (**Exhibit I**).[1]

27. Because the waiver did not identify any "extenuating circumstances" as required under Bylaw 12.8.6, on March 25, 2025, the NCAA sent a request for additional information:

> Why didn't the [student-athlete] participate in additional competition during the 2020-21 season? Were there any circumstances outside of the SA's or institution's control that led to his minimal competition? If so, please explain and provide all available supporting documentation.

A true and correct copy of the NCAA's communications with the Naval Academy is attached as **Exhibit J**.

28. The Naval Academy responded to the NCAA's request as follows: "The student-athlete was a closer and a freshman, so he played in the games that the coach asked him to play in. Student states he wasn't part of the coach's active rotation for the season." (*Id.*)

29. After considering this response, and the totality of the information provided, the NCAA denied the waiver request on March 28, 2025. (*Id.*) A true and correct copy of the NCAA's record of this denial is attached as **Exhibit K**. The denial stated as follows:

> Requirements of the legislation are not satisfied:
>
> In denying the waiver request, staff noted legislation, as established by the Division I membership, specifically identifies circumstances that support relief from use of a season-of-competition. In this case, requirements of the legislation are not satisfied given [student-athlete] competed in one contest during the second half of the playing season. **Furthermore, [the Naval Academy] was unable to provide objective documentation satisfying any legislated exceptions or demonstrate extenuating circumstances existed** (e.g., coach's documented misunderstanding) which would enable staff to provide relief consistent with intent of legislation.

---

[1] These exhibits are all true and correct copies of the supporting documentation submitted by the Naval Academy.

(Emphasis added.)

30. The fact that the Mr. Murtha's coach at Notre Dame chose to give more playing time to other student-athletes than to Mr. Murtha does not constitute an extenuating circumstance as contemplated by the Bylaws. The waiver process is intended to address situations where eligibility was compromised due to rules misinterpretation or extraordinary events that prevent a student-athlete from competing in a substantial portion of the season—not routine competitive decisions by coaching staff.

31. The NCAA identified no precedent in its own records where it granted a season-of-competition waiver to a student-athlete in the absence of documentation reflecting a coach's rules misinterpretation or other extenuating circumstances.

32. Institutions have thirty calendar days from the time a decision on the waiver is released to appeal that decision to the committee for the division in which the institution holds membership. *See* **Exhibit L** at 7 (true and correct copy of appeal rules). Rather than appeal the decision, the Naval Academy accepted the NCAA's denial on March 28, 2026. After 30 days, the waiver case was automatically closed. (*See id.*) If the institution accepts the decision, it waives its right to appeal the decision. (*See id*.)

33. On July 14, 2025, the Naval Academy emailed the NCAA about a "possible appeal" of Mr. Murtha's waiver denial. A true and correct copy of that email is attached as **Exhibit M**. In a follow-up letter dated July 15, the Naval Academy added that it had undergone internal staffing changes in the April-May 2025 timeframe. (*Id.*) The letter also indicated that while Plaintiff had "accept[ed]" the waiver denial in March 2025, he had since "changed his mind about the outcome." (*Id.*) As a result, the Naval Academy wrote, "we are asking one more time to see if the NCAA will reach a different outcome." (*Id.*)

34. Exceptions to the 30-day appeal period may only be granted by the divisional committee chair when an institution is able to demonstrate, in writing, that exceptional circumstances caused the institution's appeal to be submitted beyond the 30-day appeal period. (*Id.*)

35. The NCAA's Chair of the Division I Committee on Student-Athlete Reinstatement considered the Naval Academy's request for leave to file a belated appeal, and on July 18, 2025, denied the request because the Naval Academy failed to establish "exceptional circumstances" for an appeal outside the 30-day window. A true and correct copy of the July 18, 2025 decision letter is attached as **Exhibit N**.

36. On September 3, 2025, the Naval Academy sent another email to the NCAA explaining that Mr. Murtha's final contest during the 2020–21 baseball season occurred on April 9, 2021—not April 11, 2021, as originally reported. The NCAA treated this email as a "reconsideration" request and carefully assessed it on the merits. It determined that all six contests in which Mr. Murtha participated during the 2020–21 season took place in the first half of the season. A true and correct copy of the NCAA's "Case Summary" describing this record correction is attached as **Exhibit O**, and a true and correct copy of the Naval Academy's September 3, 2025 email is attached as **Exhibit P**.

37. The NCAA denied this *de facto* reconsideration request on September 16, 2025:

> In this case, requirements of the legislation are not satisfied given [the institution] was unable to provide objective documentation satisfying any legislated exceptions or demonstrate extenuating circumstances existed (e.g., coach's documented misunderstanding) which would enable staff to provide relief consistent with intent of legislation.

(Exhibit N.)

38. On January 5, 2026, the Naval Academy asked the NCAA to reconsider its denial

9

of the waiver again. It submitted an "Institutional Letter of Responsibility and Request for Acceptance of Out-of-Time Reconsideration" (Dkt. 1-2) (a true and correct copy of which is attached as **Exhibit Q**); a "Reconsideration Memorandum" (Dkt. 1-3) (a true and correct copy of which is attached as **Exhibit R**); and a letter of support from a "faculty athletics representative," Dr. Christine Copper (a true and correct copy of which is attached as **Exhibit S**).

39. Reconsideration is only permitted when the institution presents "new information" that was not "reasonably available at the time of the original submission." (*See* Exhibit L at 6–7.) The reinstatement committee considers the request on the merits only if that standard is met. (*Id.*)

40. In its January 2026 request, the Naval Academy claimed "new information" had come to light that was not "reasonably available at the time of the original submission" in March 2025 and that "could have affected the outcome" of the original decision. (*See* Ex. R.)

41. The only "new" substantive information, however, matched the Naval Academy's prior clarification in September 2025 that Mr. Murtha had not participated in the latter half of the 2020–21 Notre Dame season.

42. On January 27, 2026, the Naval Academy's Director of Athletics sent an email to the NCAA inquiring about the status of the latest reconsideration request. A true and correct copy of that email is attached as **Exhibit T**.

43. After reviewing the reconsideration request, the NCAA denied it on February 10, 2025. A true and correct copy of the decision letter is attached as **Exhibit U**. The decision letter noted that Mr. Murtha's waiver request had already been re-considered and denied on September 16, 2025 (when Mr. Murtha submitted the corrected facts). (*See id.*) It also explained that Mr. Murtha failed to show that "exceptional circumstances caused the institution's appeal to be submitted beyond the 30-day appeal period." (*See id.*)

10

44. Even if Mr. Murtha had been granted the season-of-competition waiver, he also needed a waiver of the Five-Year Rule to extend his eligibility window through 2026. The Naval Academy never requested one on his behalf.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on March 4, 2026.

_____
Jerry Vaughn